# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| FREDERICK SPENCER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 4:11CV01306 AGF |
| ) | |
| JAMES HURLEY, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the petition of Missouri state prisoner Frederick Spencer for a writ of habeas corpus pursuant to 28 U.S.C. ' 2254.[1] On August 30, 1999, Petitioner was convicted by a jury of three counts of forcible rape and three counts of forcible sodomy, committed between May 1994 and September 1995. He was sentenced on October 15, 1999, to a total of 15 years' imprisonment. His conviction and sentence were affirmed on direct appeal.

For federal habeas relief Petitioner claims that being required to complete the Missouri Sexual Offender Treatment Program ("MoSOP") to be eligible for parole and/or release on his conditional release date violated his constitutional rights. More specifically, he claims that the State violated his privilege against self-incrimination and his rights to access to the courts because completion of MoSOP, in turn, required an admission of guilt to his crimes and the cessation of court actions challenging his convictions. Petitioner also claims that the State violated the Ex Post Facto Clause by

---
[1] The Court considers the following filings as constituting the entirety of the petition: Docket entries No. 1, No. 1-1, No. 13, and No. 31.

canceling his conditional release date and by applying a MoSOP policy adopted in 2006, to him; and violated his due process rights by not following its procedures in cancelling his conditional release date.[2] For the reasons set forth below, federal habeas relief shall be denied.

## BACKGROUND

Petitioner's prison "Face Sheet" dated February 21, 2008, indicates that as of February 4, 2000, he was assigned a conditional release date of February 5, 2010.[3] The Face Sheet shows a Time Credit Release Date of April 5, 2009,[4] and maximum discharge date of October 5, 2014. (Resp. Ex. A at 18-19.)

---

[2] Petitioner's previous action for habeas relief on grounds related to his conviction was denied in *Spencer v. Purkett*, No. 4:03CV01756 TIA, 2006 WL 1778974 (E.D. Mo. June 26, 2006). His appeal was dismissed by the Eighth Circuit Court of Appeals on November 2, 2006. His motion to reopen the case was denied on March 5, 2007, and the appeal from that denial was dismissed on August 7, 2007.

[3] Under Missouri law, a sentence of imprisonment for a term of years for felonies other than dangerous felonies, including forcible sodomy and forcible rape, consists of a prison term and a term of conditional release. Mo. Rev. Stat. § 558.011.1. The exclusion for dangerous felonies became effective on August 28, 1994. For sentences of 15 years, the conditional release term is three years. *Id*. § 558.011.4(1)(b) (2003).

Section 558.011.5 provides in part as follows:

The date of conditional release from the prison term may be extended up to a maximum of the entire sentence of imprisonment by the board of probation and parole. The director of any division of the department of corrections except the board of probation and parole may file with the board of probation and parole a petition to extend the conditional release date when an offender fails to follow the rules and regulations of the division or commits an act in violation of such rules.

[4] Mo. Rev. Stat. § 558.041 authorizes the MDOC to award "good time credit" (days subtracted from the incarceration time) to an inmate who has served his sentence in a "peaceful manner and has taken advantage of the rehabilitation programs available to

In approximately July 2008, Petitioner was referred to MoSOP. MoSOP is a program of the Missouri Department of Corrections ("MDOC") created pursuant to Missouri Revised Statute § 589.040, enacted in 1980. The statute directs MDOC to develop a rehabilitation program for sex offenders, and since 1990 requires that all persons imprisoned for sexual assault offenses "successfully complete" the program "prior to being eligible for parole or conditional release."[5] The statutory goal of the program is to prevent future sexual assaults by the program's participants. Mo. Rev. Stat. § 589.040.2.

Pursuant to MDOC Policy D5-4.1, MoSOP consists of two mandatory phases. "Successful completion of Phase I is dependent upon the offender's acknowledgement and admittance of their [sic] sexual offense and a willingness to work toward personal change"; and an offender who is involved in an appeal process challenging his conviction "will be viewed as not accepting responsibility" and "will not be allowed to graduate from Phase I." (Doc. No. 1-8.) An offender is to be granted two opportunities to participate in the program. It appears that effective July 1, 1996, MDOC's policy changed to explicitly

---

him." The section provides that "[a]ny violation of institutional rules or the laws of this state may result in the loss of all or a portion of any credit earned by the inmate pursuant to this section."

MDOC regulations promulgated pursuant to the above statute provide as follows: "the [earned time] credit shall be subtracted from the established conditional release date, creating a projected time credit release date. Inmates demonstrating acceptable behavior and appropriate program involvement shall be eligible for consideration for administrative parole release on that date."

14 Mo. Code of State Regs. 10-5.010.

[5]   Prior to 1990, the statute required all sex offenders to "participate" in the program. *See Schafer v. Moore*, 46 F.3d 43, 44 (8th Cir. 1995). MO. CODE REGS. ANN. TIT. 14, § 10-5.010 (1986).

state that sexual offenders had to complete MoSOP or risk having their conditional release date extended up to their maximum release date. *See Miller v. Mitchell*, 25 S.W.3d 658, 663 (Mo. Ct. App. 2000). Petitioner was terminated from MoSOP twice, once in August 2008 and once in September 2008, both times because he would not admit guilt or dismiss his lawsuits related to his convictions. On April 3, 2009, Petitioner filed an action in state court for declaratory judgment and injunctive relief under Missouri Rule of Civil Procedure 87.02, challenging the constitutionality of requiring a prisoner to admit his guilt in order to participate in MoSOP and then, if the prisoner refused, using his nonparticipation to deny him early release. Petitioner maintained that his rights under the Fifth Amendment's Self-Incrimination Clause were violated by the State requiring him to confess to the crimes he was convicted of as a condition of participation in MoSOP, to be eligible for early release. Petitioner asserted that he was innocent and because he had testified to his innocence, such admissions of guilt could subject him to charges of perjury. Petitioner also asserted that his First Amendment right to petition the government was violated by the requirement that he cease all legal actions related to his conviction in order to participate in MoSOP. He asserted that his due process rights were violated because the State failed to abide by its own laws when it did not honor his conditional release date. He also asserted that conditioning early release for sex offenders on completion of MoSOP violated the Equal Protection Clause because individuals convicted of non-sexual crimes do not have to complete a similar program. And he asserted that the Ex Post Facto Clause was violated by applying the 1996 MDOC policy to him because he had already been assigned a conditional release date. Petitioner demanded immediate release because he

had completed the "prison term" portion of his sentence. (Resp. Ex. A at 3-11.)

According to Petitioner, at a parole hearing in August 2009, he stated that he was not guilty of the crimes of conviction. The Parole Board informed Petitioner that it would probably take steps to extend his conditional release date to the maximum release date, October 5, 2014, because he would not admit guilt and therefore could not participate in MoSOP. On November 6, 2009, MDOC requested such an extension of Petitioner's conditional release date.

On November 16, 2009, the trial court dismissed Petitioner's Rule 87 action, summarily concluding that Petitioner had failed to state a claim for relief. On December 8, 2009, the Parole Board held a conditional release extension hearing, and on December 29, 2009, extended Petitioner's conditional release date to October 5, 2014, the day on which his full 15-year sentence is set to end.

On appeal from the denial of his Rule 87 action, Petitioner reasserted all the constitutional claims he had raised to the trial court, and argued additionally that he was not provided adequate notice of the December 8, 2009 parole hearing, and was not permitted to call or cross-examine witnesses, in violation of Mo. Rev. Stat. § 558.011.5. On August 9, 2010, the Parole Board held a rehearing on the extension of Petitioner's conditional release, and reached the same decision as before.

On December 28, 2010, the Missouri Court of Appeals affirmed the trial court's dismissal of Petitioner's Rule 87 action. The Court applied the plurality opinion in *McKune v. Lile*, 536 U.S. 24 (2002) (holding that the Fifth Amendment's Self Incrimination Clause was not violated when participation in a treatment program for

5

incarcerated sex offenders required a confession of committed crimes, where the consequences for not participating was transfer to a higher-security prison, because such consequence was not severe enough to constitute compulsion as it was not an atypical or significant hardship of imprisonment) to Petitioner's Fifth Amendment claim. The state appellate court held that Petitioner's right against self incrimination was not violated because the loss of his conditional release for refusing to admit guilt, "did not constitute an atypical or significant hardship, and [MoSOP] – including the requirement that participants admit their guilt for the sexual offenses for which they were convicted – furthers the legitimate penological objective of rehabilitating sex offenders and reducing their risk of recidivism." (Resp. Ex. H at 17.) The court also held that Missouri inmates have no protected liberty interest in good time credits (resulting in a time-credit release date that is earlier than the conditional release date) or in conditional release.

The court reasoned that although the plurality opinion in *McKune* specifically noted that the refusal of the prisoner in that case to admit his guilt did not result in an extension of his term of incarceration, nor affect any eligibility for good-time credits or parole, "[t]hese observations cannot fairly be read to hold that extending a term of incarceration, or altering an inmate's eligibility for good-time credits or parole, necessarily constitute unconstitutional compulsion." *Id.*

Next, the Missouri Court of Appeals held that Petitioner's ex post facto claim failed because Petitioner's term of imprisonment had not been changed – he was sentenced to 15 years in prison and his conditional release date had been extended such that he would serve the full 15 years. He therefore received no additional punishment. Further, the court

6

held, the prohibition against ex post facto laws is directed only against legislatures, and not against agencies such as MDOC.

**Federal Habeas Petition**

In his petition for habeas relief, Petitioner reasserts the constitutional claims presented to the state courts. He asserts that the Missouri Court of Appeals erred by applying the *McKune* plurality opinion instead of Justice O'Connor's concurring opinion. In that concurring opinion, Justice O'Connor stated that the imposition of longer incarceration for refusing to incriminate oneself "would surely" constitute compulsion in this context. *McKune*, 536 U.S. at 52. Petitioner maintains that in any event, the denial of a Missouri inmate's time credit release date or conditional release, based on the inmate's failure to admit guilt as part of sex-offender treatment, violates the Fifth Amendment. He also faults the Missouri Court of Appeals for not addressing his First Amendment, equal protection, and due process claims.

Respondent only addresses Petitioner's Fifth Amendment self-incrimination claim. Respondent argues that this claim fails because the Missouri Court of Appeals properly identified *McKune* as the controlling law, properly determined that the plurality opinion constituted the holding of the case, and reasonably applied that holding to Petitioner's claim.

**Standard of Review**

Where a claim has been adjudicated on the merits in state court, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that application for a writ of habeas corpus cannot be granted unless the state court's adjudication

7

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

The "contrary to" clause is satisfied if a state court has arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent but arrives at the opposite result. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 405-6 (2000)). A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 413; *see also Linehan v. Milczark*, 315 F.3d 920, 924 (8th Cir. 2003).

"Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citation omitted); *see also Greene v. Fisher*, 132 S. Ct. 38, 44 (2011); *Yang v. Roy*, 743 F.3d 622, 625 (8th Cir. 2014).

As explained in *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004),

> [s]ection 2254(d)(1) would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law. At the same time, the difference between applying a rule and extending it is not always clear. Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt.

Any claim that was raised but not adjudicated on the merits in the state court proceedings is entitled to de novo review by the federal habeas court. *Cone v. Bell*, 556 U.S. 449, 472 (2009).

**Fifth Amendment Claim**

To establish his Fifth Amendment claim, Petitioner must prove two things: (1) that the testimony desired by the state carried the risk of incrimination, and (2) that the penalty he suffered amounted to compulsion. *See McKune*, 536 U.S. at 35-36; *United States v. Antelope*, 395 F.3d 1128, 1134 (9th Cir. 2005). "The privilege against self-incrimination does not terminate at the jailhouse door, but the fact of a valid conviction and the ensuing restrictions on liberty are essential to the Fifth Amendment analysis." *McKune*, 536 U.S. at 36 (citing *Sandin v. Conner*, 515 U.S. 472, 485 (1995)). "A broad range of choices that might infringe constitutional rights in a free society fall within the expected conditions of confinement of those who have suffered a lawful conviction." *Id*.

Here, as in *McKune*, only the second prong is at issue. In *McKune*, the Supreme Court considered (in the context of a case under 42 U.S.C. § 1983 brought by a Kansas prisoner) whether the consequences of not participating in a prison treatment program for sexual offenders amounted to compulsion under the Fifth Amendment, where admission to the program required the prisoners to confess to their sexual offenses without guaranteed immunity, and failure to complete the program resulted in transfer from the medium-security prison, where the program was held, to a maximum-security prison, and

the loss of several privileges such as having a television in the cell, readily available exercise facilities, and more work and wage opportunities.

The plurality opinion held that the prisoner was not impermissibly compelled to incriminate himself. Four Justices in the plurality held that

> [a] prison clinical rehabilitation program, which is acknowledged to bear a rational relation to a legitimate penological objective, does not violate the privilege against self-incrimination if the adverse consequences an inmate faces for not participating are related to the program objectives and do not constitute atypical and significant hardships in relation to the ordinary incidents of prison life.

*McKune*, 536 U.S. at 38-39.

The "atypical and significant hardship" standard was borrowed from the Supreme Court jurisprudence of prisoner's due process rights – only such hardships implicate a liberty interest protected by due process. The four Justices held that in the case before it, the adverse consequences of not admitting guilt did not meet this standard. In reaching their decision, the four Justices noted that in the case before it, the prisoner's "decision not to participate in the [rehabilitation program] did not extend his term of incarceration. Nor did his decision affect his eligibility for good-time credits or parole." *Id*. at 38.

Justice O'Connor concurred in the result, determining that the facts of the case did not constitute compulsion under the Fifth Amendment. She did not agree that the Fifth Amendment compulsion standard was the same as the due process "atypical and significant hardship" standard; rather she believed, as did the four Justices in the dissent, that a less restrictive standard applied. But she believed that the penalties assessed the

prisoner in the case before the Court "were not compulsive on any reasonable test." *Id.* at 54-55.

Justice O'Connor specifically did not, herself, state a particular test for determining what degree of penalty amounts to compulsion in the prison context. She noted, however, that the compulsion inquiry should "recognize that it is generally acceptable to impose the risk of punishment, however great, so long as the actual imposition of such punishment is accomplished through a fair criminal process" and so long as it stops short of punishments such as "longer incarceration or execution" penalties that "would surely implicate a 'liberty interest.'" *Id.* at 53, 52.

When "no single rationale explaining the result [of a Supreme Court opinion] enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977) (citations omitted). Since *McKune*, the vast majority of courts have held that Justice O'Connor's opinion controls, and this Court agrees with this approach. *See, e.g., Roman v. DiGuglielmo*, 675 F.3d 204, 212 (3d 2012); *Antelope*, 395 F.3d at 1133 n.1; *Ainsworth v. Stanley*, 317 F.3d 1, 4 (1st Cir. 2002); *Searcy v. Simmons*, 299 F.3d 1220, 1225 (10th Cir. 2002) ("Because Justice O'Connor based her conclusion on the narrower ground that the . . . policy was not compulsion under the Fifth Amendment, we view her concurrence as the holding of the Court in *McKune*.").

Thus, the Court concludes that the Missouri Court of Appeals erred in applying the "atypical and significant hardship" standard to Petitioner's Fifth Amendment claim. But review of the state appellate court's decision does not end here, because habeas relief is

only available when the state court's decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

The Court believes that M*cKune* can be fairly read to suggest that all nine Justices would hold under the facts of the present case, including Missouri's statutorily-mandated conditional release term, that Petitioner's Fifth Amendment rights were violated. *See, e.g., King v. Davis*, 688 F. Supp. 2d 689 (E.D. Mich. 2009). But this reading would be based on *dicta*, and as noted above, *dicta* in Supreme Court opinions does not create "clearly established Federal law, as determined by the Supreme Court of the United States." *See Ainsworth*, 317 F.3d at 5-6 ("Taken together, the O'Connor and plurality opinions [in *McKune*] do not clearly foreshadow how the Court would decide our case" involving a rehabilitation program that required confession and the denial of parole to sex offenders who had not completed the program).

Nor does the Court believe that this is a case where "principles are fundamental enough" such that under the factual permutations presented here, "the necessity to apply an earlier rule is beyond doubt." *See Yarborough*, 541 U.S. at 666. Thus this Court need not stake out a position on the issue at this time. *See Edwards v. Goord*, 362 F. App'x 195, 199 (2d Cir. 2010) (denying habeas claim in this context because there was no clearly established federal law establishing the petitioner's Fifth Amendment claim; "All that can be said of *McKune*, then, is that a majority of the justices agreed that the Fifth Amendment privilege against compelled self-incrimination was not violated when prisoners faced less restrictive sanctions than [the loss of good time credits] . . . as a consequence of refusing to

12

participate in sex offender counseling" that required an admission of guilt); *cf. Wright v. Van Patten,* 128 S. Ct. 743, 746-47 (2008) (holding that the state appellate court determination that the petitioner's right to counsel was not violated when defense counsel appeared via speaker phone at plea hearing was not contrary to, or an unreasonable application of, clearly established federal law; although the Supreme Court long recognized a petitioner's right to relief if his defense counsel was absent at a critical stage of the proceeding, the Court had never squarely held that participation by speaker phone should be treated as absence); *Abby v. Howe*, 742 F.3d 221, 227 (6th Cir. 2014) (declining to hold that a habeas petitioner's claim that his right to counsel of choice necessarily is violated when his secondary retained counsel has a scheduling conflict precluding his or her attendance at trial, even though two circuit courts so held, because the Supreme Court had not yet squarely addressed the scope of the right to counsel of choice in the multiple-counsel context).

The divergent results in post-*McKune* decisions of state appellate courts also demonstrate that there is no clearly established federal law on the issue. *See State v. Iowa Dist. Court for Webster Cnty.,* 801 N.W.2d 513, 525-26 (Iowa 2011) (citing divergent cases); *Carey*, 549 U.S. at 76-77 (noting that the divergence of lower courts on the question presented supported a finding that the state court's decision was not contrary to or an unreasonable application of clearly established federal law).

The Court recognizes that after *McKune*, other federal habeas courts have considered the merits of Fifth Amendment claims similar to Petitioner's. *See, e.g.,Roman v. DiGuglielmo*, 675 F.3d 204 (3d Cir. 2012) (rejecting claim on the merits); *King*, 688 F.

13

Supp. 2d at 693 (concluding that the petitioner stated a plausible claim for habeas relief and denying respondent's motion to dismiss the petition). But the Court believes that the better approach is to deny federal habeas relief due to the lack of clearly established federal law on the matter.

**Ex Post Facto Claim**

Ex post facto laws are laws which are retrospective and which disadvantage the affected offender "by altering the definition of criminal conduct or increasing the punishment for the crime." *Lynce v. Mathis*, 519 U.S. 433, 441 (1997); *see also Peeler v. Heckler*, 781 F.2d 649, 651 (8th Cir.1986). Here, at all times relevant to Petitioner's case, Mo. Rev. Stat. § 589.040.2 required successful completion of MoSOP before an inmate may be considered for early release. The Ex Post Facto Clause is therefore not implicated. *See Page v. Motley*, No. 4:11CV1951 FRB, 2013 WL 1192589, at *4 (E.D. Mo. March 22, 2013) (holding that the Ex Post Facto Clause was not implicated where the plaintiff's failure to complete MoSOP did not extend his actual sentence, but only affected his conditional release date.) In sum, the adjudication of the Missouri Court of Appeals of Petitioner's ex post facto claim was reasonable and not contrary to federal law as established by the Supreme Court.

**First Amendment Claim**

Petitioner's First Amendment claim was presented to, but not considered by, the state courts. Thus there is no state court decision to defer to. Prison inmates have a constitutionally protected right of access to the courts, grounded in the First Amendment. *Bounds v. Smith*, 430 U.S. 817, 828 n. 16 (1977). In *Lewis v. Casey*, 518 U.S. 343, 349

(1996), the Supreme Court held that in order to have standing to bring a claim for denial of access to the courts, the inmate must establish that he suffered an actual injury as a result of the alleged denial. In other words, an inmate fails to state a claim without any showing that his legal claims have been frustrated or impeded. *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007).

It may be that Plaintiff's decision to continue with his challenges to his convictions foreclosed his entry into MoSOP, but he has not shown any corresponding prejudice to his litigation. Rather, after his referral to MoSOP, he continued to aggressively pursue his federal habeas action challenging his convictions. *See Lindensmith v. Petschow*, No. 12-CV-10644-DT, 2014 WL 1304590, at *3 (E.D. Mich. Mar. 31, 2014) (rejecting similar claim in the context of a 42 U.S.C. § 1983 action). Accordingly, this claim fails.

**Equal Protection Claim**

Petitioner's equal protection claim is also without merit. *See Gale v. Moore,* 763 F.2d 341, 343-44 (8th Cir. 1985) ("[MoSOP's] goal of preventing sex crimes through rehabilitation and deterrence apparently constitutes a rational basis and justifies the classification which may have been given thereunder."); *Patterson v. Webster*, 760 F. Supp. 150, 153 (E.D. Mo. 1991).

**Due Process Claim**

Absent a viable claim that in denying him his conditional release date, Respondent violated another substantive federal constitutional right, Petitioner's due process claims fail as Missouri inmates do not have a liberty interest in conditional release, *Watson v. Clover*, 102 F. App'x 519, 519 (8th Cir. 2004); *Weston v. Denney*, No. 13 00120 CV W

15

FJGP, 2014 WL 988802, at *1 (W.D. Mo. March 13, 2014), or in good time credit or their time credit release date, *Walter v. Prudden*, No. 4:10CV2191 JCH, 2011 WL 1979606, at *1-2 (May 20, 2011) (explaining that good time credits merely entitle inmates to consideration of administrative parole; great discretion is awarded to the Missouri Board of Probation & Parole.). Thus this claim fails.

## CONCLUSION

The Court concludes that Petitioner is not entitled to federal habeas relief. Because the Court believes that reasonable jurists might disagree with the Court's disposition of Petitioner's Fifth Amendment claim, the Court will grant him a Certificate of Appealability on that claim. *See Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (standard for issuing a Certificate of Appealability) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The Court denies a Certificate of Appealability as to all other claims.

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Frederick Spencer for a writ of habeas corpus relief is **DENIED**.

A separate Judgment shall accompany this Memorandum and Order.

*[signature]*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 6th day of June, 2014.